**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CRYSTAL B. O'NEILL,<br>              Plaintiff<br><br>              v<br><br>GANNETT FLEMING, INC. and JUDY<br>HRICAK,<br>              Defendants | No.<br><br><br>Civil Action – Law<br><br>(Electronically Filed)<br><br>Jury Trial Demanded |

**COMPLAINT**

AND NOW, TO WIT, comes Plaintiff, Crystal B. O'Neill, by and through her counsel,

Solomon Z. Krevsky, Esquire and Krevsky Bowser, LLC and files the following

Complaint:

**Introduction**

1.      Plaintiff Crystal B. O'Neill ("Plaintiff" or "O'Neill") brings this action against

        her former employer, Defendant Gannett Fleming, Inc. ("Corporate

        Defendant" or "Gannett") and Defendant Judy Hricak ("Individual

        Defendant" or "Hricak"), for claims arising under Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §2000 et seq ("Title VII"), Section 102 of

the Civil Rights Act of 1991, 42 U.S.C. §1981(a), and the Pennsylvania

Human Relations Act, 43 P.S. §951, et seq. ("PHRA").

2.      This is an action brought to remedy violations of Plaintiff's civil rights and to

correct unlawful employment practices that discriminate on the basis of

sex/gender, and to provide appropriate relief to Plaintiff who was adversely

affected by such practices.  Plaintiff was subjected to a misogynistic and

abusive work environment by agents of the Defendant and retaliated

against as a result of her opposition to and rejection of same.  The unlawful

discrimination and retaliation resulted in the Constructive Discharge of

Plaintiff's employment with Corporate Defendant effective March 29, 2019.

3.      Plaintiff alleges, *inter alia*, that she was subjected to a work environment

replete with gender discrimination, harassment and misogyny. Plaintiff's

complaints of same were met with overt retaliation which resulted in a

hostile work environment.  Corporate Defendant failed to take proper or

effective action to prevent or remedy the offensive and discriminatory

conduct.  Plaintiff was retaliated against by Corporate Defendant as a result

of her opposition to the gender discrimination at work.  As a result of the

hostile work environment and retaliation, Plaintiff suffered significant pecuniary losses and emotional distress.

**Parties, Jurisdiction, and Venue**

4.    Plaintiff O'Neill is an adult female who, at all times relevant hereto, resided in the Commonwealth of Pennsylvania and was formerly employed by Corporate Defendant.

5.    Corporate Defendant is a global infrastructure engineering firm specializing in the areas of natural resources, professional engineering, earth sciences, geospatial, construction services and facilities and provides planning, design, technology, and construction management service for a range of markets and disciplines.

6.    At all relevant times hereto, Plaintiff worked at Corporate Defendant's corporate headquarters located at 207 Senate Avenue, Camp Hill (Cumberland County), Pennsylvania.

7.    At all relevant times hereto, Individual Defendant Hricak served as Corporate Defendant's Vice President and Chief Communications Officer.

8.    Defendant is an "Employer" as that term is defined under and pursuant to Title VII and the PHRA.

9.     This Court has jurisdiction over Plaintiff's legal claims pursuant to 28 U.S.C.

§1331 as this case arises under Title VII.  Moreover, this Court has

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

10.    Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C.

§1391(b) as the facts and circumstances, acts and/or omissions and

incidents and/or actions alleged herein took place in this judicial district.

11.    All preconditions to the filing of this action, by way of pursuit of

administrative remedies have been satisfied.  Plaintiff timely filed her

Charge of Discrimination with the Pennsylvania Human Relations

Commission ("PHRC"), said charge being dual filed with the U. S. Equal

Employment Opportunity Commission ("EEOC").

12.    Plaintiff sought from the EEOC a Notice of Right to Sue with respect to the

above-referenced Charge of Discrimination.  The EEOC issued its Notice of

Right to Sue on May 7, 2021.

**Underlying Facts**

13.    At all relevant times hereto, Plaintiff was a member of a class of individuals

protected against discrimination and harassment in the workplace on

account of her sex/gender, female.

14.   Plaintiff commenced employment with Corporate Defendant on November 14, 2016 as Manager of Corporate Communications for the Department of Corporate Communications and Marketing.

15.   On or about March 17, 2018, Plaintiff was promoted by Individual Defendant Hricak to the position of Sr. Manager Corporate Communications.

16.   As Sr. Manager Corporate Communications, Plaintiff reported to Individual Defendant Hricak.

17.   However, as Sr. Manager Corporate Communications, Plaintiff worked closely with John Mullan ("Mullan"), Corporate Defendant's Business Development Practice Manager.

18.   Upon information and belief, as Business Development Practice Manager, Mullen had actual and/or apparent authority to take actions with respect to Plaintiff that had the capacity to affect the terms and conditions of Plaintiff's employment with Corporate Defendant.

### *Plaintiff Lodges Report of Gender Discrimination/Harassment*

19.   On July 31, 2018, Plaintiff lodged with Hricak a formal complaint of gender harassment and discrimination ("Complaint of Gender Discrimination")

concerning Mullan's misogynistic comments, attitudes and behaviors

directed to Plaintiff and other women employed by Corporate Defendant.

20.    The substance of Plaintiff's Complaint of Gender Discrimination focused on

Mullan's misogynistic attitude and abusive behaviors that served to devalue

and marginalize women as professionals in the workplace.  Specifically,

Plaintiff:

a.    Expressed concern regarding Mullan's treatment of Elisha Miller,

who resigned from employment with Corporate Defendant on July

27, 2018 after only six months of employment because of Mullan's

abusive behavior towards her, as well as his poor treatment of

women at the company in general;

b.    Recounted instances of Mullan's treatment of Elisha Miller that

Plaintiff had witnessed including, but not limited to, screaming at and

berating Ms. Miller in front of other employees and disparaging Ms.

Miller to company contractors;

c.    Recounted instances where Mullan referred to Plaintiff and Ms.

Miller as "sweetie" and used other gender-derogatory terms when

referring to women in general or to Ms. Miller and Plaintiff in

particular;

d.   Noted that Ms. Miller had earlier communicated her concerns of

Mullan's abusive gender-based harassment to Mullan's superior,

Corporate Defendant's Chief Operating Officer, Paul Nowicki, who,

upon information and belief, failed to launch an investigation or

otherwise take measures reasonably calculated to prevent, correct or

remedy gender harassment and discrimination in the workplace;

e.   Expressed concern that COO Nowicki's failure to effectively address

Mullan's gender harassment and discrimination would serve as tacit

approval of such behavior, and questioned how Mullan was

permitted to treat female employees so poorly and yet continue to

advance within the organization; and

f.   Shared her observation that Mullan's conduct was directed only at

female employees and that she had never observed Mullan directing

harassing, demeaning, hostile and abusive behaviors to similarly

situated men employed by Corporate Defendant.

21.   By lodging her Complaint of Gender Discrimination, Plaintiff opposed a

practice forbidden by the PHRA and Title VII; namely, gender harassment

and discrimination.

22.   On the same day that Plaintiff lodged her Complaint of Gender
Discrimination, Holly Baskinger, a managerial agent for Corporate
Defendant, embedded a 2018 Chairman & President's Second Quarter
Livestream in a Yammer post noting that Chief Executive Officer, Robert
Scaer, laughed at an online audience question regarding how many women
might be appointed stockholders and senior associates. Ms. Baskinger
responded that the question is not laughable and that she was
disheartened by the CEO's response.

23.   Ms. Baskinger's post triggered more than a dozen comments over the
ensuing days.  In response to one such comment, Ms. Baskinger highlighted
company statistics that expose a corporate culture of gender bias (e.g. 28%
of staff are women but only 8% of stockholders are women; only 1 woman
and 15 men have been appointed stockholders in the past 4 years), and
shared that "There's something in this firm's DNA that will allow a woman
to advance only so far and someone should call it like it is. I stand by my
post. It was upsetting to hear people and our leader laughing at that
question".

24.   In response to Plaintiff's Complaint of Gender Discrimination, Individual
Defendant Hricak was entirely dismissive indicating "I am sure there are

other reasons Ms. Miller resigned" (or words to that effect), and that

"Mullan is just that way...he's from New York..." (or words to that effect).

25.    In response to Plaintiff's Complaint of Gender Discrimination, Corporate

Defendant failed to launch an investigation or otherwise take measures

reasonably calculated to prevent, correct or remedy gender harassment

and discrimination in the workplace.

### *Defendants Retaliate Against Plaintiff*

26.    On August 10, 2018, ten days after Plaintiff's Complaint of Gender

Discrimination, Individual Defendant Hricak demoted Plaintiff from Sr.

Manager Corporate Communications to Sr. Communications Strategist and

removed from Plaintiff all supervisory responsibilities.

27.    Plaintiff believes and therefore avers that the above-refenced demotion

was in retaliation for Plaintiff's Complaint of Gender Discrimination.

28.    Over the ensuing months and continuing through and including March 15,

2019, Individual Defendant Hricak:

a.    Subjected Plaintiff's work to heightened and unreasonable scrutiny;

b.    Generally ignored Plaintiff and otherwise treated her as a pariah;

c.    Marginalized Plaintiff's role, responsibility and authority within the

organization;

    d.      Isolated Plaintiff from management and/or departmental team meetings;

    e.      Communicated with Plaintiff (both verbally and in writing) in a terse, agitated and confrontational manner;

    f.      Recommended that Plaintiff's compensation be significantly reduced;

    g.      Imposed upon Plaintiff an unreasonable mandate that she update Hricak on her whereabouts at all times while at work;

    h.      Falsely accused Plaintiff of failing to keep the Corporate Communications Department abreast of project developments, causing the team to experience operational delays;

    i.      Falsely accused Plaintiff of failing to complete assignments in a timely manner;

    j.      Disparaged Plaintiff to colleagues, management, and executive management; and

    k.      Purposefully interfered with and/or sabotaged Plaintiff's ability to perform her job.

29.    Plaintiff believes and therefore avers that the conduct described in Paragraphs 28.a. through 28.k. above was in retaliation for Plaintiff's Complaint of Gender Discrimination ("Unlawful Retaliation").

### *Plaintiff is Constructively Discharged from Employment*

30.   The Unlawful Retaliation, as more fully described above, caused Plaintiff to

become upset, emotionally distressed, fearful and mentally tormented.

31.   As a result of the unremedied and unabated gender

discrimination/harassment and Unlawful Retaliation, Plaintiff was forced to

involuntarily terminate her employment with Corporate Defendant by

tendering her notice of departure on March 15, 2019 effective March 29,

2019.

32.   The Unlawful Retaliation, as more fully described above, was sufficiently

severe and pervasive such that the work environment became so caustic,

toxic, and intolerable as to compel Plaintiff to involuntarily separate her

employment with Corporate Defendant ("Constructive Discharge").

33.   On March 22, 2019, Plaintiff was asked to meet with Tracy Heyman and Bill

Shartle, Corporate Defendant's Employee Relations Managers, so that an

exit interview could be conducted.

34.   At the exit interview, Plaintiff reiterated the substance of her Complaint of

Gender Discrimination and explained that she had lodged a formal

complaint of gender harassment and discrimination with Hricak, and that

Hricak dismissed Plaintiff's concerns without taking any action to investigate the issue or remedy the problem.

35.   At the exit interview, Plaintiff explained that she and others have observed Hricak to undermine her female staff and treat them more harshly than similarly situated men.  Plaintiff provided specific examples of such conduct.

36.   At the exit interview, Plaintiff explained that she believed Hricak retaliated against Plaintiff in response to the Complaint of Gender Discrimination and detailed the Unlawful Retaliation described in Paragraphs 28.a. through 28.k. above.

37.   The Constructive Discharge of Plaintiff's employment was the result of Defendants' official action or inaction, as more fully described above.

38.   Plaintiff's response to the caustic and intolerable workplace resulting in the Constructive Discharge of Plaintiff's employment was reasonable given the totality of the circumstances.

39.   The demotion and Constructive Discharge of Plaintiff's employment constitutes adverse employment action.

**COUNT I**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq**
*CRYSTAL B. O'NEILL V. GANNETT FLEMING, INC.*
**RETALIATION - HOSTILE WORK ENVIRONMENT**

40.    Plaintiff repeats and repleads Paragraphs 1 through 39 of this Complaint, as more fully set forth at length and incorporates herein by reference.

41.    Title VII prohibits retaliation against employees who have complained of gender/harassment in the workplace, opposed unlawful acts, and/or lodged a good faith report of gender discrimination/harassment, among other things.

42.    Plaintiff possessed a good faith belief that Mullan's gender harassment and discrimination was unlawful.

43.    As a result, Plaintiff lodged a Report of Gender Discrimination with Defendants.

44.    Plaintiff's Report of Gender Discrimination constitutes legally protected activity.

45.    Commencing in August 2018 and continuing through March 15, 2019 Plaintiff was subjected on a regular basis to Unlawful Retaliation, as more fully described above.

46.   At all relevant times hereto, Individual Defendant Hricak and Mullan served as a managerial agents for Corporate Defendant.

47.   At all relevant times hereto, Individual Defendant Hricak was aided in accomplishing the Unlawful Retaliation by virtue of her position as a managerial agent for Corporate Defendant and as Plaintiff's immediate supervisor.

48.   The Unlawful Retaliation was offensive to Plaintiff and would have been offensive to a reasonable person under similar circumstances.

49.   The Unlawful Retaliation was severe in that it caused Plaintiff to become upset, emotionally distressed, fearful, and mentally tormented.

50.   The Unlawful Retaliation caused Plaintiff to become intimidated and threatened.

51.   The Unlawful Retaliation was regular or pervasive and occurred on a frequent, if not daily, basis.

52.   The Unlawful Retaliation was uninvited, unwelcome, and unwanted by the Plaintiff.

53.   The Unlawful Retaliation was sufficiently severe or pervasive to detrimentally alter the terms and conditions of Plaintiff's employment and create for her a hostile and abusive work environment.

54. The Unlawful Retaliation was so severe and/or pervasive such that a reasonable employee would have found Defendants' action materially adverse and otherwise dissuade a reasonable worker from making or supporting a charge of discrimination of engage in other legally protected activity.

55. The demotion and Unlawful Retaliation, as more fully described above, was of a continuing nature and therefore constitutes a continuing violation of law up to and including the Constructive Discharge of Plaintiff's employment on March 29, 2019.

56. The Unlawful Retaliation, as more fully described above, resulted in adverse employment action, including the Constructive Discharge of Plaintiff's employment on March 29, 2019.

57. As a direct and proximate result of Defendants' actions, as more fully described above, Plaintiff has suffered and will continue to suffer loss of employment, lost wages and benefits, and future lost wages and benefits, and claim is made therefor.

58. Plaintiff is entitled to reinstatement with the same seniority status that she possessed before the retaliatory actions took place, or front pay if reinstatement is not feasible.

59.   As a direct and proximate result of Defendants' actions, as more fully described above, Plaintiff has sustained extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

60.   As a direct and proximate result of Defendants' actions, as more fully described above, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

61.   The actions and/or omissions of Defendants, as more fully described above, were extreme and outrageous, egregious, and undertaken with malice, with the direct intent to harm Plaintiff, and/or with callous disregard for Plaintiff's well-being, and with reckless indifference to Plaintiff's statutorily protected rights.  Moreover, Defendants engaged in no good faith effort to comply with the law or Plaintiff's civil rights, and Plaintiff is thereby entitled to punitive damages, and claim is made therefor.

62.   Plaintiff is further entitled to recover reasonable attorney fees and litigation expenses pursuant to Title VII, and claim is made therefor.

**COUNT II**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq**
*CRYSTAL B. O'NEILL V. GANNETT FLEMING, INC.*
**RETALIATION - CONSTRUCTIVE DISCHARGE**

63.    Plaintiff repeats and repleads Paragraphs 1 through 62 of this Complaint, as

more fully set forth at length and incorporates herein by reference.

64.    Title VII prohibits retaliation against employees who have complained of

sexual harassment in the workplace, opposed unlawful acts, and/or lodged

a good faith report of gender harassment/discrimination, among other

things.

65.    Plaintiff possessed a good faith belief that Mullan's gender discrimination

and harassment was unlawful.

66.    As a result, Plaintiff lodged a Report of Gender Discrimination with

Defendants.

67.    Plaintiff's Report of Gender Discrimination constitutes legally protected

activity.

68.    Commencing in August 2018 and continuing through March 15, 2019

Plaintiff was subjected on a regular basis to Unlawful Retaliation, as more

fully described above.

69.  The Unlawful Retaliation, as more fully described above, resulted in tangible adverse employment action and/or the loss of tangible employment benefits including, but not limited to, the following:

    a.  Substantially disrupting Plaintiff's working conditions;

    b.  Demoting Plaintiff from Sr. Manager Corporate Communications to Sr. Communications Strategist and removing from Plaintiff all supervisory responsibilities;

    c.  Subjecting Plaintiff's work performance to heightened and unreasonable scrutiny;

    d.  Falsely accusing Plaintiff of performing her job deficiently or in an unsatisfactory manner;

    e.  Falsely accusing Plaintiff of failing to complete assignments in a timely manner;

    f.  Marginalizing Plaintiff's role, responsibility and authority within the organization;

    g.  Isolating Plaintiff from management and/or departmental team meetings;

    h.  Interfering with and/or sabotaged Plaintiff's ability to perform her job;

      i.      Disparaging Plaintiff to colleagues, management, and executive management;

      j.      Imposing upon Plaintiff an unreasonable mandate that she update Hricak on her whereabouts at all times while at work;

      k.      Creating for Plaintiff a hostile and abusive working environment; and

      l.      Constructively terminating Plaintiff's employment.

70.    The Unlawful Retaliation was such that a reasonable employee would have found Defendants' actions materially adverse and otherwise dissuade a reasonable worker from making or supporting a charge of discrimination of engage in other legally protected activity.

71.    The Constructive Discharge of Plaintiff's employment was the result of Defendants' official action or inaction, as more fully described above.

72.    Plaintiff's response to the caustic and intolerable workplace resulting in the Constructive Discharge of Plaintiff's employment was reasonable given the totality of the circumstances.

73.    Defendants constructively discharged Plaintiff's employment in retaliation for her Complaint of Gender Discrimination.

74.    The demotion and Constructive Discharge of Plaintiff's employment constitutes adverse employment action.

75.   The demotion and Unlawful Retaliation, as more fully described above, was of a continuing nature and therefore constitutes a continuing violation of law up to and including the Constructive Discharge of Plaintiff's employment on March 29, 2019.

76.   The Unlawful Retaliation, as more fully described above, resulted in adverse employment action, including the Constructive Discharge of Plaintiff's employment on March 29, 2019.

77.   As a direct and proximate result of Defendants' actions, as more fully described above, Plaintiff has suffered and will continue to suffer loss of employment, lost wages and benefits, and future lost wages and benefits, and claim is made therefor.

78.   Plaintiff is entitled to reinstatement with the same seniority status that she possessed before the retaliatory actions took place, or front pay if reinstatement is not feasible.

79.   As a direct and proximate result of Defendants' actions, as more fully described above, Plaintiff has sustained extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

80.   As a direct and proximate result of Defendants' actions, as more fully described above, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

81.   The actions and/or omissions of Defendants, as more fully described above, were extreme and outrageous, egregious, and undertaken with malice, with the direct intent to harm Plaintiff, and/or with callous disregard for Plaintiff's well-being, and with reckless indifference to Plaintiff's statutorily protected rights.  Moreover, Defendants engaged in no good faith effort to comply with the law or Plaintiff's civil rights, and Plaintiff is thereby entitled to punitive damages, and claim is made therefor.

82.   Plaintiff is further entitled to recover reasonable attorney fees and litigation expenses pursuant to Title VII, and claim is made therefor.

**COUNT III**

**Pennsylvania Human Relations Act, 43 P.S. §951, et seq.**
*CRYSTAL B. O'NEILL V. GANNETT FLEMING, INC. and JUDY HRICAK*
**RETALIATION**

83.   Plaintiff repeats and repleads Paragraphs 1 through 82 of this Complaint, as

more fully set forth at length and incorporates herein by reference.

84.   The actions and/or omissions identified herein, as more fully set forth

above and incorporated hereto by reference, violate the Pennsylvania

Human Relations Act, 43 P.S. §955 et seq.

85.   Specifically, the actions and or inactions by corporate defendant constitute

discrimination/retaliation against plaintiff because she opposed an

unlawful practice under the PHRA; namely, gender/sex discrimination.

86.   The Unlawful Retaliation was sufficiently severe or pervasive to

detrimentally alter the terms and conditions of Plaintiff's employment and

create for her a hostile and abusive work environment.

87.   The Unlawful Retaliation, as more fully described above, resulted in a

hostile and abusive work environment for Plaintiff, as more fully described

above.

88.   The Unlawful Retaliation, as more fully described above, was sufficiently

severe and pervasive such that the work environment became so caustic,

toxic, and intolerable as to compel the Constructive Discharge of Plaintiff's employment.

89. The Unlawful Retaliation, as more fully described above, resulted in tangible job detriments and/or adverse employment action, as more fully described above, including but not limited to the Constructive Discharge of Plaintiff's employment on March 29, 2019.

90. Unlawful Retaliation was so severe and/or pervasive such that a reasonable employee would have found Defendants' action materially adverse and otherwise dissuade a reasonable worker from making or supporting a charge of discrimination of engage in other legally protected activity.

91. The demotion and Unlawful Retaliation, as more fully described above, was of a continuing nature and therefore constitutes a continuing violation of law up to and including the Constructive Discharge of Plaintiff's employment on March 29, 2019.

92. Individual Defendant Hricak is liable to Plaintiff in that she, *inter* alia, aided, abetted, incited, compelled and/or coerced Corporate Defendant to act in a manner declared unlawful by the PHRA.  43 P.S. § 955(e).

93. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages and

benefits, future lost wages and benefits, extreme mental anguish, severe

anxiety, personal humiliation, painful embarrassment, disruption of

personal life and loss of enjoyment in life, and claim is made therefor.

94.   Plaintiff is further entitled to recover reasonable attorney fees and

litigation expenses pursuant to the PHRA, and claim is made therefor.


WHEREFORE, Plaintiff requests this Honorable Court to enter judgment in her

favor and against Defendants, jointly and severally, for:

     i.   Back pay and benefits;

    ii.   Front pay and benefits should reinstatement prove unfeasible;

   iii.   Statutory prejudgment interest;

   iv.   Compensatory damages;

    v.   Punitive damages under Title VII;

   vi.   Reasonable attorney fees and costs;

  vii.   An Order prohibiting Corporate Defendant, its officers, successors

and assigns, and all persons in active concert or participation with it

from engaging in sexual harassment, discrimination, disparate

treatment, constructive discharge and any other employment practice which discriminates on the basis of sex;

viii.   An Order requiring Corporate Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for women and which eradicate the effects of past and present unlawful employment practices;

ix.   An Order requiring Corporate Defendant to institute and carry out a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against discrimination and harassment;

x.   An Order requiring Corporate Defendant to institute and carry out a training program which shall promote supervisor accountability, imposing on all managers and supervisory personnel a duty to actively monitor the work area to ensure compliance with policies on non-discrimination; and requiring all managers and supervisors to report any incidents and/or complaints of harassment and/or retaliation of which they become aware to the department charged with handling such complaints; and

xi.    Any other relief that this Court deems just and equitable.


                                        Respectfully submitted,

                                        KREVSKY BOWSER LLC


Dated:    5/10/2021          By:    */s/ Solomon Z Krevsky*
                                    Solomon Z Krevsky (PA #72719)
                                    Anthony T Bowser (PA #204561)
                                    20 Erford Road | Suite 300A
                                    Lemoyne, PA 17043
                                    (717) 731-8600
                                    skrevsky@krevskybowser.com
                                    abowser@krevskybowser.com
                                    *Attorneys for Plaintiff*